130 N.J. Super. 388 (1974)
327 A.2d 260
STATE IN THE INTEREST OF A.S., A JUVENILE.
Superior Court of New Jersey, Juvenile and Domestic Relations Court  Bergen County.
September 30, 1974.
*389 Mr. Kenneth C. Dolecki, attorney for movant.
Mr. Joseph A. Clark, attorney for juvenile.
TROAST, J.J.D.R.C.
Application has been made for release of a partial transcript of a hearing in this court on October 24, 1973, involving certain complaints against A.S., a juvenile. That hearing resulted in an order continuing the matter for a nine-month period of adjustment, and at the expiration of that period the complaints against A.S. were dismissed. However, the juvenile had caused a complaint to be filed in a municipal court against Thomas Corcoran, who was one of the complainants in the Juvenile and Domestic Relations Court action involving A.S. After a hearing in the municipal court Thomas Corcoran was convicted of assault and battery and he now seeks a transcript of part of the testimony of A.S. in this court.
In the municipal court A.S. testified as follows:
*390 Q Did you on that date, October 24, 1973, make a statement that on September 26, 1973, in the alleyway where the alleged incident occurred it was too dark for you to see who hit you?
A No, I did not.
The transcript of the testimony of A.S. in this court on October 24, 1973 reveals that he was asked the following question about the identity of the person who struck him: "You don't know which one it was?" and that he answered "No, really I don't know cause it was dark out in the back alley."
The municipal court has granted Thomas Corcoran a rehearing on the assault and battery charge in order to afford him an opportunity to produce the partial transcript in question, and Corcoran is asking only for a transcript covering the alleged conflicting testimony referred to above.
R. 5:10-6(b) states in part:
No public use shall be made of the stenographic or sound record, or a transcript thereof, of any hearing or trial by any person, including a party, except in the course of an appeal or, if no juvenile is involved in the proceeding, in other legal proceedings, or as authorized by the court.
See also, N.J.S.A. 2A:4-65.
R. 5:10-7(a) also deals with the availability of court records of the Juvenile and Domestic Relations Court and provides that transcripts of proceedings are considered procedural records. R. 5:10-7(c) states in part:
All procedural and social records in juvenile matters and all social records in adult matters shall be strictly safeguarded from indiscriminate public inspection. The court may, if its discretion, in the best interest of a juvenile or adult or for other good cause, permit inspection of any procedural or social record. * * *
Thus there is a policy expressed by both rules that juvenile proceedings should be kept confidential. Frequently, the juvenile who appears in court during his early years adjusts his behavior and never returns to the courts as a criminal defendant, and it would be harmful to stigmatize such a *391 juvenile.[1] However, the confidentiality of a transcript in the Juvenile and Domestic Relations Court is not absolute. The rules provide for the release of juvenile court transcripts "as authorized by the court." The court, in its discretion, has the power to authorize such a release "in the best interest of a juvenile * * * or for other good cause * * *."
Thomas Corcoran's right of confrontation under the Sixth Amendment of the United States Constitution requires a release of the requested transcript of the juvenile's testimony. In Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), a juvenile was a crucial prosecution witness against defendant Davis. At the time of the trial the juvenile, Green, was on probation by order of a juvenile court after having been adjudicated a delinquent for burglarizing two cabins. A protective order was sought in the Davis case by the prosecutor in order to prevent any reference to Green's juvenile record by the defense in the course of cross-examination of Green. Such a protective order was granted in reliance upon an Alaska Rule of Children's Procedure which did not permit release of information about a juvenile case. However, after conviction Davis appealed to the United States Supreme Court which stated, "In this setting, we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender." The court pointed out that since the trial at which the juvenile testified also had to do with a theft, it was possible that the juvenile cooperated with the police and identified the defendants so that he himself would not *392 be suspected of the theft. The court noted the unfairness of the juvenile's answer of "No" when asked whether he had ever been questioned before by law enforcement officers.
In Davis the Supreme Court noted that a main purpose of confrontation is to secure for the opponent the opportunity of cross-examination. The court said:
Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.
Certainly, prior inconsistent testimony at a juvenile court hearing is extremely important in discrediting a witness. In the present case, as in Davis, the accuracy and truthfulness of the juvenile's statement was a key element in prosecution of the juvenile's complaint against Thomas Corcoran.
In Davis the Supreme Court recognized the interest of the State in protecting the anonymity of the juvenile offender but found that under the facts the right of confrontation outweighed that interest, saying:
We do not and need not challenge the State's interest as a matter of its own policy in the administration of criminal justice to seek to preserve the anonymity of a juvenile offender. * * * Here, however, petitioner sought to introduce evidence of Green's probation for the purpose of suggesting that Green was biased and, therefore, that his testimony was either not to be believed in his identification of petitioner or at least very carefully considered in that light. Serious damage to the strength of the State's case would have been a real possibility had petitioner been allowed to pursue this line of inquiry. In this setting we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender.
Similarly, in the present case the right of confrontation outweighs the state policy of confidentiality in juvenile cases. There should be an opportunity to cross-examine the juvenile about his prior inconsistent testimony, and considerations of fair play and justice dictate that a transcript *393 of the prior testimony be made available. In this case, where the juvenile caused the complaint to be filed in the municipal court, the State's interest in confidentiality in juvenile proceedings must yield to the constitutional right to effective cross-examination. In any event, the policy of confidentiality should not be a vehicle for the juvenile to shield prior inconsistent testimony from a court.
The transcript of the testimony of A.S. in this court concerning his ability to identify the individual who allegedly struck him will be released for in camera inspection of the municipal judge rehearing the charge against Thomas Corcoran. In the event such an inspection satisfies the judge that there is reasonable doubt of Thomas Corcoran's guilt, it will not be necessary for the partial transcript to be made public. If he determines that a further hearing on the charges is necessary, he may make the transcript available to the parties.
NOTES
[1] In Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the United States Supreme Court articulated the policy reasons favoring confidentiality as follows: "The State argues that exposure of a juvenile's record of delinquency would likely cause impairment of rehabilitative goals of the juvenile correctional procedures. This exposure, it is argued, might encourage the juvenile offender to commit further acts of delinquency, or cause the juvenile offender to lose employment opportunities or otherwise suffer unnecessarily for his youthful transgression."